# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JAMES OWENS, et al., | |
| Plaintiffs, | Civil Action No: 20cv2648 (DLC) |
| -against- | |
| TURKIYE HALK BANKASI A.S., a/k/a "HALKBANK," | Oral argument requested |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
## TO DISMISS THE SECOND AMENDED COMPLAINT

Mehmet Baysan (MB-8487)
Omer Er (5614573)
MICHELMAN & ROBINSON, LLP
800 Third Avenue, 24th Floor
New York, New York 10022
Phone:   (212) 730-7700
Fax:       (212) 730-7725

John S. Williams (JW-6927)
Eden Schiffmann (admitted *pro hac vice*)
Akhil K. Gola (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, D.C. 20005

650 Fifth Avenue, Suite 1500
New York, New York 10019

Phone: (202) 434-5000
Fax:      (202) 434-5029
Email:   jwilliams@wc.com

*Attorneys for Defendant*

Dated:  September 25, 2020

# TABLE OF CONTENTS

Page

BACKGROUND ......................................................................................................................2

ARGUMENT ...........................................................................................................................4

I. THE COURT LACKS JURISDICTION UNDER THE FOREIGN SOVEREIGN
   IMMUNITIES ACT................................................................................................................4

   A. Halkbank Is an Agency or Instrumentality of Turkey. ......................................................5

   B. The Commercial-Activities Exception Does Not Apply.....................................................9

II. PLAINTIFFS HAVE NOT PLEADED PERSONAL JURISDICTION OVER
    HALKBANK. ...................................................................................................................11

   A. Plaintiffs Do Not Allege Personal Jurisdiction Regarding the Zarrab-Scheme
      Claims. ......................................................................................................................12

   B. Plaintiffs Do Not Allege Personal Jurisdiction Over the CPLR 5225(b)
      Claim. ........................................................................................................................14

III. THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER THE
     DOCTRINE OF *FORUM NON CONVENIENS*. ...............................................................15

   A. Plaintiffs' Decision To Sue in New York Is Not Entitled to Deference. ...................15

   B. Turkey Is an Adequate Forum for This Dispute. ...........................................................16

   C. Private and Public Interest Factors Strongly Favor Dismissal....................................17

      1. Private Interest Factors Favor Dismissal. .................................................................17

      2. Public Interest Factors Favor Dismissal.....................................................................18

IV. PLAINTIFFS FAIL TO STATE FRAUDULENT CONVEYANCE CLAIMS.................19

   A. New York's Fraudulent Conveyance Statutes Do Not Apply Outside New
      York. ..........................................................................................................................20

   B. Turkish Law Should Govern Plaintiffs' Fraudulent Conveyance Claims. ..................22

   C. Halkbank Was Not a Transferee or Beneficiary of Iran's Conveyances Under
      New York Law. ..........................................................................................................25

   D. Plaintiffs Do Not Adequately Plead Their Fraudulent Conveyance Claims................28

      1. Plaintiffs Fail To Plead a Claim Under DCL § 273-a. .............................................28

Page

2.       Plaintiffs Fail To Plead a Claim Under DCL § 276. ..........................................30

V.     PLAINTIFFS' TURNOVER CLAIMS SHOULD BE DISMISSED. ....................................31

A.     Plaintiffs Have Not Met the Requirements of CPLR 5225(b).....................................34

B.     Plaintiffs Do Not Plead a Claim Under TRIA. .................................................................34

CONCLUSION.......................................................................................................................................35

# TABLE OF AUTHORITIES

Page

Cases:

*Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies, Ltd.*,
No. 94cv5620, 1999 WL 64283 (S.D.N.Y. Feb. 8, 1999) ...............................................21

*Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir. 2002) ...............................................16

*Amusement Industry, Inc. v. Midland Avenue Assocs.*, 820 F. Supp. 2d 510 (S.D.N.Y. 2011) .......... 26, 28

*Anglo-Iberia Underwriting Management v. P.T. Jamsostek (Persero)*, 600 F.3d 171 (2d Cir. 2010) ...........10

*Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 999 F.2d 33 (2d Cir. 1993) .......................10

*Armada (Singapore) Pte. v. Amcol International Corp.*,
244 F. Supp. 3d 750 (N.D. Ill. 2017) ...............................................21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................... 13, 28

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
813 F.3d 98 (2d Cir. 2016) ...............................................7

*Bank of New York v. Rubin*, 484 F.3d 149 (2d Cir. 2007) ...............................................35

*Bergdorf Goodman, Inc. v. Marine Midland Bank*, 411 N.Y.S.2d 490 (Civ. Ct. 1978) ...............................34

*Bernard v. Lombardo*, No. 16cv863, 2016 WL 7377240 (S.D.N.Y. Nov. 23, 2016) ...........................34

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ....................................... 12, 14

*Calder v. Jones*, 465 U.S. 783 (1984) ....................................... 12, 14

*Cantor Fitzgerald & Co. v. 8an Capital Partners Master Fund, L.P.*,
16 N.Y.S.3d 733 (App. Div. 2015) ...............................................27

*Cargill International S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012 (2d Cir. 1993) ...................................5

*Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2018) ................................ 13, 14

*Chau v. Lewis*, 771 F.3d 118 (2d Cir. 2014) ...............................................22

*Clearstream Banking S.A. v. Peterson*, 140 S. Ct. 813 (2020) ...............................................33

*Coscarelli v. ESquared Hospitality LLC*, 364 F. Supp. 3d 207 (S.D.N.Y. 2019) ...............................25

*De Letelier v. Republic of Chile*, 748 F.2d 790 (2d Cir. 1984) ...............................................10

*Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152 (2d Cir. 2018) ...............................................34

Page

Cases—continued:

*Eclaire Advisor Ltd. v. Daewoo Engineering & Construction Co.,*
    375 F. Supp. 2d 257 (S.D.N.Y. 2005) ............................................................ 21, 22

*EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.,* 322 F.3d 635 (9th Cir. 2003) ...................... 8

*Elgin Sweeper Co. v. Melson Inc.,* 884 F. Supp. 641 (N.D.N.Y. 1995) ...................................... 21

*Esheva v. Siberia Airlines,* 499 F. Supp. 2d 493 (S.D.N.Y. 2007) ............................................ 18

*European Community v. RJR Nabisco, Inc.,* 764 F.3d 129 (2d Cir. 2014) ...................................... 9

*Federal Deposit Insurance Corp. v. Porco,* 552 N.E.2d 158 (N.Y. 1990) ...................................... 26

*Federal Housing Finance Agency v. UBS Americas, Inc.,* 858 F. Supp. 2d 306 (S.D.N.Y. 2012) .............. 24

*Federal National Mortgage Association v. Olympia Mortgage Corp.,*
    No. 04cv4971, 2006 WL 2802092 (E.D.N.Y. Sept. 28, 2006) .................................... 30

*Filler v. Hanvit Bank,* 378 F.3d 213 (2d Cir. 2004) ............................................ 6, 7, 8, 9

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,*
    582 F.3d 393 (2d Cir. 2009) ........................................................................ 12

*Fundación Presidente Allende v. Banco de Chile,*
    No. 05cv9771, 2006 WL 2796793 (S.D.N.Y. May 29, 2006) ........................ 1, 25, 26, 27

*Garb v. Republic of Poland,* 440 F.3d 579 (2d Cir. 2006) ........................................................ 6

*Global Reinsurance Corp. v. Equitas Ltd.,* 969 N.E.2d 187 (N.Y. 2012) ...................................... 21

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.,* 449 F.3d 377 (2d Cir. 2006) ................ 22, 23, 24

*Goshen v. Mutual Life Insurance Co. of New York,* 730 N.Y.S.2d 46 (App. Div. 2001) .......................... 21

*Gowan v. Westford Asset Management LLC (In re Dreier LLP),*
    462 B.R. 474 (Bankr. S.D.N.Y. 2011) ............................................................ 29

*Grove Press, Inc. v. Angleton,* 649 F.2d 121 (2d Cir. 1981) ...................................................... 14

*Gucci America, Inc. v. Weixing Li,* 768 F.3d 122 (2d Cir. 2014) ................................................ 32

*Guirlando v. T.C. Ziraat Bankasi A.S.,* 602 F.3d 69 (2d Cir. 2010) ............................................ 11

*HBE Leasing Corp. v. Frank,* 48 F.3d 623 (2d Cir. 1995) .................................................. 28, 29

*In re Allstate Insurance Co.,* 613 N.E.2d 936 (N.Y. 1993) ...................................................... 22

Page

Cases—continued:

*In re Arctrade Financial Technologies Ltd.*, 337 B.R. 791 (Bankr. S.D.N.Y. 2005) ...................................31

*In re Bernard L. Madoff Investment Securities LLC*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011).....................30

*In re JVJ Pharmacy Inc.*, No. 16cv10508, 2020 WL 4251666 (Bankr. S.D.N.Y. July 24, 2020)... 23, 24

*In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721 (Bankr. S.D.N.Y. 2008) ...................................................30

*In re Picard*, 917 F.3d 85 (2d Cir. 2019) ...........................................................................................32

*In re Sharp International Corp.*, 403 F.3d 43 (2d Cir. 2005) ........................................................29, 30, 31

*In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir. 2008)...........................................7, 14

*In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659 (2d Cir. 2013)...............................11, 12, 13

*International Shoe Co. v. Washington,* 326 U.S. 310 (1945) .................................................................11

*Integrity Electronics, Inc. v. Garden State Distributors, Inc.*,
     No. 14cv3197, 2016 WL 3637004 (E.D.N.Y. June 30, 2016).......................................................24

*Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001) ............................................ 15, 17

*JW Oilfield Equipment, LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587 (S.D.N.Y. 2011) .......... 19, 32

*Kamholtz v. Yates County*, 350 F. App'x 589 (2d Cir. 2009) ......................................................3

*Kashef v. BNP Paribas SA*, 442 F. Supp. 3d 809 (S.D.N.Y. 2020) .................................................. 24, 25

*Kingstown Capital Management, L.P. v. Vitek*,
     No. 19cv3170, 2020 WL 5350492 (S.D.N.Y. Sept. 4, 2020)................................................... 16, 18

*Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825 (N.Y. 2009) ..................................................19

*Krock v. Lipsay*, 97 F.3d 640 (2d Cir. 1996)...........................................................................23

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155 (2d Cir. 2012) .......................... 22, 24

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) .....................13, 14, 15

*Lyman Commerce Solutions, Inc. v. Lung*,
     No. 12cv4398, 2014 WL 476307 (S.D.N.Y. Feb. 6, 2014) .........................................................24

*Mayer v. Time, Inc.*, No. 17cv5613, 2018 WL 1738322 (S.D.N.Y. Apr. 9, 2018) ..........................15, 16

*Mercier v. Sheraton International, Inc.*, 981 F.2d 1345 (1st Cir. 1992) .......................................17

Page

Cases—continued:

*MFS/Sun Life Trust-High Yield Services v. Van Dusen Airport Services Co.*,
  910 F. Supp. 913 (S.D.N.Y. 1995) .......................................................... 30

*Murphy v. Korea Asset Management Corp.*, 421 F. Supp. 2d 627 (S.D.N.Y. 2005) ........................... 5, 7, 8

*North Mariana Islands v. Canadian Imperial Bank of Commerce*, 990 N.E.2d 114 (N.Y. 2013) ........ 14, 31

*Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 145 (2d Cir. 2005) ............................ 16

*Oil City Petroleum Co., Inc. v. Fabac Realty Corp.*, 418 N.Y.S.2d 51 (App. Div. 1979) ........................... 34

*Padula v. Lilarn Properties Corp.*, 644 N.E.2d 1001 (N.Y. 1994) ............................................... 23

*Paradigm BioDevices, Inc. v. Viscogliosi Brothers, LLC*, 842 F. Supp. 2d 661 (S.D.N.Y. 2012) ........ 23, 24

*Peninsula Asset Management (Cayman) Ltd. v. Hankook Tire Co.*, 476 F.3d 140 (2d Cir. 2007) ............. 9

*Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v.*
  *Morgan Stanley Investment Management Inc.*, 712 F.3d 705 (2d Cir. 2013) .......................... 28

*Peterson v. Islamic Republic of Iran*, 876 F.3d 63 (2d Cir. 2017) .......................................... 33

*Peterson v. Islamic Republic of Iran*, 963 F.3d 192 (2d Cir. 2020) ......................................... 33

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) .......................................................... 18

*Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64 (2d Cir. 2003) ............................... 17

*Ray v. Ray*, 799 F. App'x 29 (2d Cir. 2020) ................................................................. 30

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ...........................................9, 10

*Robinson v. Government of Malaysia*, 269 F.3d 133 (2d Cir. 2001) ............................................. 5

*Rodriguez v. KGA Inc.*, 64 N.Y.S.3d 11 (App. Div. 2017) ..................................................... 21

*Roselink Invs., L.L.C, v. Shenkman*, 386 F. Supp. 2d 209 (S.D.N.Y. 2004) ................................... 27

*Rubin v. Islamic Republic of Iran*, 709 F.3d 49 (1st Cir. 2013) ............................................. 35

*Rubin v. Islamic Republic of Iran*, 830 F.3d 470 (7th Cir. 2016) ........................................... 33

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ............................................................4, 10

*Scottish Air International Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224 (2d Cir. 1996) ........... 18

*Singh v. Caribbean Airlines Ltd.*, 798 F.3d 1355 (11th Cir. 2015) ........................................6, 7

Page

Cases—continued:

*Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007) ........................5

*Spencer Stuart Human Resources Consultancy (Shanghai) Co. v. American Industrial Acquisition Corp.*, No. 17cv2195, 2017 WL 4570791 (S.D.N.Y. Oct. 12, 2017) ...............................................18

*Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127 (2d Cir. 1987) ................................................................5

*Türedi v. Coca Cola Co.*, 460 F. Supp. 2d 507 (S.D.N.Y. 2006) ...............................................................17

*Türedi v. Coca-Cola Co.*, 343 F. App'x 623 (2d Cir. 2009) ...............................................................16, 17

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198 (S.D.N.Y. 2002) ...............................................................................................30

*United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*, 33 F.3d 1232 (10th Cir. 1994) ..................11

*Villoldo v. BNP Paribas S.A.*, Nos. 14cv9930, 15cv268, 15cv496, 2015 WL 13145807 (S.D.N.Y. July 21, 2015) ...............1, 27

*Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230 (2d Cir. 2002) ...........................4, 10, 11

*Waldman v. Palestine Liberation Organization*, 835 F.3d 317 (2d Cir. 2016) ...........................................14

*Walters v. Industrial & Commerce Bank of China, Ltd.*, 651 F.3d 280 (2d Cir. 2011) .............................33

*Weinstein v. Islamic Republic of Iran*, 299 F. Supp. 2d 63 (E.D.N.Y. 2004) ...........................................35

*Wenzel v. Marriott International, Inc.*, No. 13cv8335, 2014 WL 6603414 (S.D.N.Y. Nov. 17, 2014) ......................................................15

*Wilds v. Lebanon National Bank*, 220 N.Y.S. 480 (App. Div. 1927) ...........................................1, 25, 26

*Wilson v. Eckhaus*, 349 F. App'x 649 (2d Cir. 2009) ...............................................................15, 16, 17

*Wilson v. ImageSat International N.V.*, No. 07cv6176, 2008 WL 2851511 (S.D.N.Y. July 22, 2008) ...................................................18, 19

*WowWee Group Ltd. v. Meirly*, No. 18cv706, 2020 WL 70489 (S.D.N.Y. Jan. 7, 2020) .....................34

*Wyatt v. Syrian Arab Republic*, 83 F. Supp. 3d 192 (D.D.C. 2015).............................................................33

Page

Federal Statutes and Rules:

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611.......................................................*passim*
    § 1603(a)....................................................................................................................................4, 5
    § 1603(b) .............................................................................................................................4, 5, 6, 7
    § 1604 .................................................................................................................................................4
    § 1605 .................................................................................................................................................5
    § 1605(a)(2) ...............................................................................................................................9, 10
    § 1610(a)..........................................................................................................................................33

Terrorism Risk Insurance Act, Pub. L. No. 107-297, 116 Stat. 2337 (Nov. 26, 2001)
    § 201(a) ......................................................................................................................................31, 34
    § 201(d)(2) ..............................................................................................................................33, 35

Federal Rules of Civil Procedure
    Rule 8................................................................................................................................................28
    Rule 9(b) ....................................................................................................................................28, 30

77 Fed. Reg. 6,659 (Feb. 5, 2012) ................................................................................................34

New York Statutes and Rules:

New York Debtor and Creditor Law
    § 273-a ...................................................................................................................19, 21, 22, 28
    § 276 ..........................................................................................................................................*passim*

New York Statutes
    § 149 ................................................................................................................................................21

New York Civil Practice Law & Rules
    301 ....................................................................................................................................................12
    5225 ........................................................................................................................14, 19, 31, 34

Miscellaneous:

European Council on Foreign Relations, *Trading with Iran via the special purpose vehicle: How it can work* (Feb. 7, 2019), https://tinyurl.com/ecfrarticle ................................................................27

1 Garrard Glenn, *Fraudulent Conveyances and Preferences* § 275 (1940)............................................28, 29

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ......................................................7

Page

Miscellaneous—cont.:

Restatement (Third) of Foreign Relations Law

§ 403 ................................................................................................................32
§ 403(2)(a) .......................................................................................................32
§ 403(2)(c) .......................................................................................................32
§ 403(2)(d) .......................................................................................................33
§ 403(2)(e) .......................................................................................................32
§ 403(2)(f) .......................................................................................................33
§ 403(2)(g) .......................................................................................................32
§ 403(2)(h) .......................................................................................................32

David D. Siegel, *"Koehler": Creating Mecca for Creditors or Anti–Mecca for Garnishees?*,
N.Y.L.J., July 28, 2009 ...................................................................................19

Plaintiffs are 876 individuals from this country and many others who have obtained more than $10 billion in default judgments against the country of Iran.  Second Amended Complaint ("SAC") ¶¶ 1–3, 19; *see* Ford Decl. at ¶ 4 & Ex. A.  The judgments were entered in 13 actions filed in the U.S. District Court for the District of Columbia in which Plaintiffs asserted injuries or death due to Iran's sponsorship of terrorist attacks in Tanzania, Kenya, Lebanon, Israel, and Iraq.  SAC ¶¶ 27–28, 40, 44, 52, 60, 63, 67.  Iran has frustrated Plaintiffs' collection efforts.  *Id.* ¶ 72.

Plaintiffs have accordingly sought to collect from third parties, including Türkiye Halk Bankasi A.Ş. ("Halkbank").  They allege two fraudulent conveyance claims under New York law, based on transfers between accounts of Halkbank customers that took place in Turkey, and two turnover claims seeking to recover any remaining Iranian assets in Halkbank accounts (also in Turkey).  The complaint brings legally deficient claims against an immune party in an improper forum.

*Immune Party:*  Halkbank is entitled to sovereign immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611 (the "FSIA").  Part I, pp.4–11, *infra*.

*Improper Forum:*  Plaintiffs have not pleaded the requirements for personal jurisdiction over Halkbank regarding any of their claims.  Part II, pp.11–15, *infra*.  And, regardless, the Court should decline to exercise jurisdiction under the doctrine of *forum non conveniens*.  Part III, pp.15–19, *infra*.

*Legally Deficient Claims:*  New York law does not apply to Plaintiffs' fraudulent conveyance claims, which are focused on bank transfers in Turkey.  Part IV.A–B, pp.20–25, *infra*.  But, if New York law does apply, Plaintiffs' claims are nevertheless barred by New York authority holding that a bank transferring funds between customer accounts is neither a transferee nor a beneficiary of the transfers.  *Villoldo v. BNP Paribas S.A.*, Nos. 14cv9930, 15cv268, 15cv496, 2015 WL 13145807, at *3 (S.D.N.Y. July 21, 2015), *aff'd*, 648 F. App'x 53 (2d Cir. 2016); *Fundación Presidente Allende v. Banco de Chile*, No. 05cv9771, 2006 WL 2796793, at *3 (S.D.N.Y. May 29, 2006), *vacated on mootness grounds on appeal*, No. 06cv5002 (2d Cir.); *Wilds v. Lebanon Nat'l Bank*, 220 N.Y.S. 480, 484 (App. Div.), *aff'd*, 245

N.Y. 629 (1927).  Plaintiffs' fraudulent conveyance claims run afoul of that authority and other rules of pleading.  Part IV.C–D, pp.25–31, *infra*.

Plaintiffs' turnover claims, which aim to collect purported Iranian assets existing in Turkey, are also deficient.  The claims are inconsistent with both principles of international comity and the FSIA.  And, in any event, Plaintiffs have not pleaded statutory prerequisites of either claim.  Part V, pp.31–35, *infra*.

The Second Amended Complaint should be dismissed.

## **BACKGROUND**

Since 1979, the United States has imposed a complex set of economic sanctions against the country of Iran for a wide variety of reasons: (i) the taking of hostages; (ii) the proliferation of offensive nuclear capabilities; (iii) human rights violations growing out of the "Green Revolution" of 2009; and (iv) the country's sponsorship of terrorism.  *See* SAC ¶¶ 3, 79 & n.71, 103 n.81, 109 n.99, 176.[1]  Because Iran has long been one of the largest exporters of oil in the world, a particular focus of the sanctions regime became limiting Iran's uses of its oil proceeds.  *Id.* ¶¶ 79–80, 106 n.87, 109 n.99.

Access to Iranian oil was, however, critical to sustaining the economies of principal United States allies that lack their own oil reserves—particularly Turkey, Japan, India, and South Korea.  *Id.* ¶¶ 79 n.71, 109 n.99.  Accordingly, the United States structured its sanctions program to allow those countries to continue to purchase oil (and natural gas) from Iran, subject to two conditions relevant here: (i) payments to Iran would be deposited into banks of each ally country (i.e., the proceeds of sales to Turkey would be deposited in a Turkish bank); and (ii) access by Iran to those accounts would be limited to certain uses, such as underwriting bilateral trade, private purchases of gold, and purchases of humanitarian goods and services intended for the Iranian people.  *Id.* ¶¶ 79 n.71, 80–82, 96.

---

[1] Citations to footnotes in the SAC incorporate the articles cited in the footnotes.

Under this regime, Halkbank was the only depository bank for Turkey's purchases of Iranian oil and gas. Superseding Indictment (ECF No. 23 Ex. 39) ¶ 8.[2] In October 2019, it was indicted for allegedly helping Iran skirt the access limitations between 2012 and 2016. *Id.* ¶ 67; *see* SAC ¶ 23 & n.3. The allegations in the indictment are the basis of Plaintiffs' complaint—namely that Halkbank improperly permitted Iran to use limited-access funds for unspecified and unidentified international purchases of goods and services. *See* SAC ¶¶ 86–100. Halkbank is innocent of the charges in the indictment and will defend itself in that matter and, should this case go forward, in this matter as well.

The indictment alleges a conspiracy between a Turkish-Iranian businessman named Reza Zarrab, Iran, and Halkbank to evade U.S. sanctions. Superseding Indictment ¶¶ 25–29. Specifically, the government alleges that Zarrab approached a former Halkbank executive with a proposal to transfer Iranian oil and gas proceeds, legally held at Halkbank, out of the bank and then on to Dubai, where Zarrab could put the funds to use for Iran, allegedly in violation of U.S. sanctions. Superseding Indictment ¶ 29. The SAC, mirroring the Government's allegations, describes this alleged conspiracy as eventually taking two forms: an alleged "Gold Export Scheme" and an alleged "Fake Food Scheme." SAC ¶¶ 88–100; *see* Superseding Indictment ¶¶ 28–39, 50–58. The SAC asserts that Halkbank knowingly participated in and facilitated both schemes, *see, e.g.*, SAC ¶¶ 88–100, 131—an allegation that Halkbank vigorously disputes.

Both alleged schemes involved the same general steps: Proceeds from Turkey's purchases of oil and gas from Iran deposited at Halkbank would first be transferred to the accounts of private Iranian banks at Halkbank, *id.* ¶ 94.a–c; and the Iranian banks would then transfer the funds to the account of a non-Iranian intermediary—usually Zarrab—at Halkbank, *id.* ¶ 94.d. On Plaintiffs'

---

[2] Plaintiffs identify the superseding indictment as the basis of many of their allegations. *See* SAC ¶ 138; *see id.* ¶ 23. The Court may consider the allegations of the superseding indictment on the motion to dismiss because Plaintiffs "relied upon [it] in framing the Complaint." *Kamholtz v. Yates Cty.*, 350 F. App'x 589, 591–92 (2d Cir. 2009). The indictment is also ECF No. 652 in Case No. 15cr00867.

account, the effect of these intra-bank transfers was to make "'Government of Iran oil' money" appear to be "'private Iranian bank' money" and then "'Reza Zarrab' money." *Id.* ¶ 91; *see id.* ¶ 97.

At that point, Plaintiffs allege, the money left Halkbank and did not return. Nor did it immediately enter the United States. Zarrab would transfer the money to another bank in Turkey, at which point he would either actually purchase gold or pretend to purchase other products, like food. *Id.* ¶¶ 94.e, 97.[3] Zarrab then transferred the gold or cash to Dubai, where he would transfer the funds into other bank accounts, then to "Dubai-based exchange houses for purposes of conducting international transactions." *Id.* ¶ 94.f–h. All told, Plaintiffs claim Zarrab's two schemes involved $20 billion in Iranian funds, approximately $1 billion (i.e., five percent) of which allegedly entered the United States temporarily. *Id.* ¶¶ 124, 141. Plaintiffs provide two examples as to which they describe the eventual destination of the funds—one where the money passed through New York on its way to a Shanghai plastics company and another involving an Indonesian company. *Id.* ¶ 140.[4]

## ARGUMENT

## I.    THE COURT LACKS JURISDICTION UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

"The Foreign Sovereign Immunities Act provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (internal quotation marks omitted); *see* 28 U.S.C. § 1604. To invoke the statute, Halkbank "must present a prima facie case" that it falls within the statutory definition of a "foreign state." *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241, 242 (2d Cir. 2002); *see* 28 U.S.C. §§ 1603(a)–(b). Halkbank "need *not* initially establish by a preponderance of the evidence that it is 'an agent or instrumentality

---

[3] Plaintiffs allege that former Halkbank executives knew that the "Fake Food Scheme" did not actually involve the purchase of food for Iranian citizens. *See id.* ¶ 97.

[4] During the criminal trial of a former Halkbank executive, Zarrab drew diagrams of two sample transactions showing the multiple transfers involved in the transactions he claims occurred. *See* Ford Decl., Exs. B–C. These charts visually capture Plaintiffs' allegations.

of a foreign state.'" *Murphy v. Korea Asset Mgmt. Corp.*, 421 F. Supp. 2d 627, 640–41 (S.D.N.Y. 2005) (emphasis in original) (quoting 28 U.S.C. § 1603(b)), *aff'd*, 190 F. App'x 43 (2d Cir. 2006).  If there is a prima facie showing of immunity, then it becomes Plaintiffs' "burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted."[5]  *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993).  If Plaintiffs meet that burden of production, "the ultimate burden of persuasion remains with" Halkbank.  *Id.*  In considering such issues, courts "look beyond the pleadings to factual submissions, including affidavits, submitted to the court in order to resolve a factual dispute."  *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140–41 (2d Cir. 2001).[6]

> **A.    Halkbank Is an Agency or Instrumentality of Turkey.**

Included in the definition of a foreign state under the FSIA is any "agency or instrumentality of a foreign state."  28 U.S.C. § 1603(a); *see id.* § 1605.  To qualify as an "agency or instrumentality," an entity must (1) be "a separate legal person, corporate or otherwise," from the foreign state; (2) be "an organ of a foreign state" *or* have "a majority of [its] shares or other ownership interest . . . owned by a foreign state"; and (3) be neither a citizen of a State of the United States nor be created under the laws of any third country.  *Id.* § 1603(b).  There is no dispute that Halkbank meets the first and third requirements; it is a corporation "organized under the laws of, and headquartered in, Turkey," not the United States or any other third country.  SAC ¶ 21.

---

[5] This Court can "choose among threshold grounds for denying audience to a case on the merits," relying on any of the personal jurisdiction, *forum non conveniens*, or comity grounds discussed below instead of deciding the sovereign immunity question.  *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citation omitted).

[6] Submitted in support of Halkbank's motion to dismiss—and particularly the sovereign immunity and *forum non conveniens* arguments advanced in support of the motion, *see, e.g.*, *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987) (per curiam) (allowing use of declarations for *forum non conveniens*)—are the Declaration of Dr. Melikşah Yasin, an expert in Turkish administrative law; the Declaration of Dr. Zekeriya Kurşat, an expert in Turkish civil law and law of obligations; the Declaration of Mehmet Sevimli, Halkbank's Chief Legal Advisor; and the Declaration of Samuel M. Ford, an attorney at Williams & Connolly LLP and counsel for Halkbank.

The remaining requirement is that Halkbank must be either majority-"owned by a foreign state" or "an organ of a foreign state." 28 U.S.C. § 1603(b).  Halkbank is both.

In the first instance, Halkbank is "majority-owned by the Government of Turkey." Superseding Indictment ¶ 1.  Specifically, the Turkish government owns Halkbank through the Turkey Wealth Fund, SAC ¶ 21; Sevimli Decl. ¶ 5, which is itself a subdivision of the government.[7]  That is, the Fund works as "an integral part of" the foreign government.  *Garb v. Republic of Poland*, 440 F.3d 579, 593–94 (2d Cir. 2006); *see Singh v. Caribbean Airlines Ltd.*, 798 F.3d 1355, 1359 (11th Cir. 2015) ("separate legal identity does not foreclose political subdivision status").

Pursuant to Turkish Law No. 6741 and Presidential Decree No. 3, the Fund is directly controlled by the President of Turkey; both the President and the Minister of Treasury and Finance sit on the Fund's board.  Yasin Decl. ¶¶ 3.1–3.3.  Indeed, while the Fund owns the government's Halkbank shares, it is the Ministry of Treasury and Finance that actually exercises the powers stemming from that ownership.  *Id.* ¶¶ 4.2–4.3; Sevimli Decl. ¶ 6.  The Fund's resources come from the Turkish government, and the Fund uses public money to invest strategically in various industries throughout Turkey.  Yasin Decl. ¶¶ 3.1, 3.6.  The Fund describes itself as "the strategic investment arm . . . of the Republic of Turkey," and emphasizes its goals of "support[ing] the economic development in the country," "reduc[ing] the current account deficit and increas[ing] the savings base of the country," making "investments in the priority regions that are aligned with Turkey's international economic strategy and investments," and "expand[ing] the depth and diversity of financial markets in the country."  Sevimli Decl. ¶ 5; *see* Yasin Decl. ¶ 3.6.  The Fund "hold[s] and administer[s] the property of the . . . state," functions that are "indisputably governmental."  *Garb*, 440

---

[7] Second Circuit precedent holds that sovereign immunity attaches to an entity that is owned by a subdivision of a foreign state, *Garb v. Republic of Poland*, 440 F.3d 579, 593–94 (2d Cir. 2006), even if it does not attach to a corporation owned by an agency or instrumentality, *Filler v. Hanvit Bank*, 378 F.3d 213, 218–20 (2d Cir. 2004).

F.3d at 594; *see Singh*, 798 F.3d at 1359; *see also* Sevimli Decl. ¶ 5; Yasin Decl. ¶ 3.1.[8]  Based on these facts, Halkbank is entitled to foreign sovereign immunity by virtue of its ownership.

Moreover, Halkbank qualifies for sovereign immunity as an "organ of a foreign state."  28 U.S.C. § 1603(b).  "[T]he term 'organ' should be interpreted broadly."  *Murphy*, 421 F. Supp. 2d at 640.  In passing the FSIA, Congress expressly noted that an agency or instrumentality "could assume a variety of forms," and noted that "a state trading corporation, a mining enterprise, a transport organization such as a shipping line or airline, a steel company, a central bank, [or] an export association" could all qualify.  *Id.* (quoting H.R. Rep. No. 94-1487, at 15–16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6614).

"Although there is no specific test for 'organ' status under the FSIA," the Second Circuit has identified five "relevant" factors:  "(1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the foreign country; and (5) how the entity is treated under foreign state law."  *Filler v. Hanvit Bank*, 378 F.3d 213, 217 (2d Cir. 2004).  The *Filler* test "invites . . . a balancing process, without particular emphasis on any given factor and without requiring that every factor weigh in favor of, or against, the entity claiming FSIA immunity."  *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 85 (2d Cir. 2008), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010).  Here, the factors indicate that Halkbank is an organ of Turkey:

*First*, Halkbank was created by Turkey for a national purpose, and continues to serve many governmental functions.  Halkbank was founded under Law No. 2284 to provide credit to artisans,

---

[8] In *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98 (2d Cir. 2016), the Second Circuit treated Kazakhstan's sovereign wealth fund as an instrumentality because it was undisputed that the fund was majority-owned by the Kazakhstani state.  *Id.* at 106.  The court did not consider whether that fund would qualify as a subdivision of the foreign state itself.

shopowners, and small businesses and promote the development of the Turkish economy.   Yasin

Decl. ¶ 2.2; Sevimli Decl. ¶ 3.

*Second*, Halkbank performs numerous functions that one ordinarily associates with government

action.   Its loans to shop owners and craftsmen—part of its original mandate—are backed by the

Turkish treasury.   Sevimli Decl. ¶ 8.b.   It also (with other state-owned banks) collects taxes on behalf

of the government.   *Id.* ¶ 8.a.   And Halkbank operates several government programs, including issuing

loans to Organized Industrial Zones and Small Industrial Areas using Ministry of Industry and

Technology resources.   *Id.* ¶ 8.c.   "There can be no question that the preservation and development

of the financial industry and financial markets are national goals," and that developing the financial

industry and national economy are "quintessential government purpose[s]."   *Murphy*, 421 F. Supp. 2d

at 642.   Collecting taxes and running government programs with government-provided resources,

likewise, are clearly national purposes that support a finding of presumptive immunity.[9]   Halkbank is

a "state-established entit[y] that serve[s] to fulfill the purposes of the state."   Yasin Decl. ¶ 2.5.

*Third*, the Turkish government—which owns more than 75% of Halkbank's shares—"actively

supervises" Halkbank.   *Filler*, 378 F.3d at 217.   Turkish law requires the Minister of Treasury and

Finance manage the government's ownership of the bank.   Yasin Decl. ¶¶ 2.4, 4.1–4.3.   To that end,

the Ministry "determines the board of directors of the bank and hence the senior management" of

Halkbank, and has ultimate authority over the administration of the bank.   *Id.* ¶¶ 2.7, 4.2; Sevimli Decl.

¶ 6.   Various government agencies also conduct oversight through state audits that apply only to public

entities, and Halkbank is subject to Turkey's state Ombudsman.   Yasin Decl. ¶¶ 2.5, 2.9.   The Turkish

---

[9] To be sure, Halkbank also serves commercial functions, but "Congress' statement in the legislative history that a 'state trading company' and 'an export association' can be 'organs' of a foreign state indicates Congress' belief that an entity's involvement in commercial affairs does not automatically render the entity non-governmental."   *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 641 (9th Cir. 2003); *see Murphy*, 421 F. Supp. 2d at 642.

government capitalizes the bank as necessary, including as recently as May 20, 2020.  Sevimli Decl. ¶ 7.  Turkish law also permits the President of the Turkish Republic to determine the procedures and principles for Halkbank's structure so long as it remains in public hands.  Yasin Decl. ¶ 2.4.  This degree of direct government involvement amply satisfies the supervision factor.  *See Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, 476 F.3d 140, 143 (2d Cir. 2007) (per curiam); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 145 (2d Cir. 2014), *reversed on other grounds*, 136 S. Ct. 2090 (2016).

Together, these factors establish that Halkbank is an organ of the Turkish state.  Like the Korean Deposit Insurance Corporation in *Filler*, Halkbank is an organ because it "was formed by statute," performs some functions "traditionally performed by the government" such as "promoting financial stability," and "many of its operations [are] overseen by the Ministry of [Treasury and] Finance."  378 F.3d at 217.  Halkbank's history, national purpose, ownership and control by the government of Turkey, and wide array of governmental functions bring it within the FSIA's definition of an agency or instrumentality of Turkey.

## B.   The Commercial-Activities Exception Does Not Apply.

Plaintiffs will not be able to carry their burden of showing that an exception to FSIA immunity applies.  In particular, the commercial-activities exception does not apply.

That exception provides in relevant part that a foreign state is not immune if "the action is based upon . . . an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  The exception does not apply for two reasons:  First, Halkbank's alleged conduct is not "commercial."  Second, Halkbank's conduct did not have a "direct effect in the United States."

*First*, the particular conduct on which Plaintiffs base their claims is not commercial.  Courts look at the foreign state's "particular actions" giving rise to the claim, "not whether the foreign government is acting with a profit motive."  *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614

(1992).  Conduct is a commercial activity when a foreign sovereign "exercises *only those powers that can also be exercised by private citizens*, as distinct from those powers peculiar to sovereigns."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993) (emphasis added) (internal quotation marks omitted).

"[P]rivate citizens" do not have the "powers" to intermediate Iranian oil sales.  Turkey designated Halkbank (and only Halkbank), under the National Defense Authorization Act ("NDAA") to act on Turkey's behalf as the repository of funds from Iranian oil sales.  Halkbank's designated role as repository of Iranian oil proceeds is simply not "of the type an individual would customarily carry on for profit."  *De Letelier v. Republic of Chile,* 748 F.2d 790, 797 (2d Cir. 1984).  Rather, because Halkbank was acting on behalf of the Turkish state, it was exercising a uniquely sovereign function.  *See Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek (Persero)*, 600 F.3d 171, 177 (2d Cir. 2010) (finding that commercial exception did not apply to state-owned insurer because of the unique role it played as the country's "default health insurer").

*Second*, even if Halkbank's conduct were commercial, it did not have a "direct effect in the United States."  28 U.S.C. § 1605(a)(2).  The "direct effect" of a commercial activity does not turn on the "foreseeability" of foreign conduct having an impact in the United States.  *Virtual Countries, Inc.*, 300 F.3d at 236.  Nor is it triggered by "an American individual or firm suffer[ing] some financial loss."  *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993).  Rather, the effect must "follow[ ] as an *immediate* consequence of the defendant's activity."  *Virtual Countries*, 300 F.3d at 236 (emphasis in original) (quoting *Weltover*, 504 U.S. at 618).

Here, any transaction that passed through the United States "falls at the end of a long chain of causation and is mediated by numerous actions by third parties."  *Id.* at 237.  Even on Plaintiffs' telling, the result of transfers between customer accounts at Halkbank was that Zarrab and others would then transfer assets to Dubai, where cash would be deposited in a different bank, then to

exchange houses.  SAC ¶¶ 94, 97; *see* Ford Decl. Exs. B–C.  If Zarrab or his compatriots did not take those actions, the money would not be used for international transactions for Iran.

Even then, most of the international transactions had nothing to do with the United States. Plaintiffs allege that Zarrab's scheme involved $20 billion in Iranian funds, but only around $1 billion allegedly touched U.S. markets.  SAC ¶¶ 124, 141.  For the "direct effect" test, "'the requisite immediacy' is lacking where the alleged effect 'depend[s] crucially on *variables independent of*' the conduct of the foreign state."  *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 75 (2d Cir. 2010) (emphasis added) (quoting *Virtual Countries*, 300 F.3d at 238).  With approximately 95% of the transactions never entering a U.S. market, "variables independent of" Halkbank's alleged conduct determined whether funds temporarily entered the United States.

As to the 5% that allegedly entered the United States, Plaintiffs do not allege that transactions culminated in money staying in this country.  *See* SAC ¶ 140 (describing ultimate recipients in China and Indonesia).  Courts reject "the proposition that any involvement in a commercial transaction by a United States bank means that a defendant's activity has had a 'direct effect' in the United States." *United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*, 33 F.3d 1232, 1238 (10th Cir. 1994).  In particular, an international transaction that passes through a New York correspondent account "to convert the funds into U.S. dollars" does not work a "direct effect"—whether the transactions are "from Sicily to London to New York to Paris," or from Istanbul to Dubai to New York to Indonesia. *Id.*  The commercial-activities exception does not apply.

## II.   PLAINTIFFS HAVE NOT PLEADED PERSONAL JURISDICTION OVER HALKBANK.

Under the Due Process Clause, personal jurisdiction cannot be exercised unless a defendant has "certain minimum contacts" with New York, and "the exercise of jurisdiction is reasonable in the circumstances"—i.e., "the suit does not offend traditional notions of fair play and substantial justice." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Int'l Shoe Co. v.*

*Washington,* 326 U.S. 310, 316 (1945)).[10]  Here, Plaintiffs must make a "prima facie showing" based on an "averment of facts" that Halkbank has such contacts.  *Id.*  In assessing Plaintiffs' allegations, the Court does not "draw argumentative inferences in the plaintiff's favor," nor "accept as true legal conclusion[s] couched as a factual allegation."  *Id.*

Given that Plaintiffs do not even attempt to assert general jurisdiction under CPLR 301, *see* SAC ¶ 17, the only question is whether Plaintiffs have pleaded specific personal jurisdiction.  This form of personal jurisdiction may be "satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *In re Terrorist Attacks on Sept. 11, 2001,* 714 F.3d at 674 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73 (1985)).  "Put another way, specific personal jurisdiction properly exists where the defendant took 'intentional, and allegedly tortious, actions . . . expressly aimed' at the forum.'"  *Id.* (quoting *Calder v. Jones,* 465 U.S. 783, 789 (1984)).  Plaintiffs' allegations fall short.

## A.   Plaintiffs Do Not Allege Personal Jurisdiction Regarding the Zarrab-Scheme Claims.

Plaintiffs' first, second, and fourth claims all arise out of the alleged scheme to evade sanctions imposed against Iran.  Their bases for personal jurisdiction over Halkbank are Halkbank's (1) "maintaining correspondent accounts" in New York, and (2) "execut[ing] its scheme through its agents, . . . each of whom purposefully directed their actions to the U.S. financial system, including financial institutions in New York."  SAC ¶ 17.  These allegations fail to establish that Halkbank "purposefully directed" or "expressly aimed" any conduct at New York.

The "'mere maintenance' of a correspondent account in the United States" is insufficient to confer specific "personal jurisdiction over the account-holder in connection with any controversy."

---

[10] Unlike foreign states, which are not viewed as "persons" for due process purposes, there is a "presumption" that instrumentalities like Halkbank have due process rights.  *See Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,* 582 F.3d 393, 398–402 (2d Cir. 2009).

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013) ("*Licci II*"). Rather, jurisdiction may be appropriate only where "the correspondent account at issue is alleged to have been used as an instrument to achieve the very wrong alleged." *Id.* Plaintiffs, however, do not allege that Halkbank's New York correspondent accounts were used to achieve the "very wrong alleged"—i.e., the Gold and Fake Food schemes. Plaintiffs instead repeatedly advert that certain other "U.S. correspondent accounts" were used. *See* SAC ¶¶ 94(g), 95, 129, 134, 139, 140, 141, 146, 147; *compare with* SAC ¶¶ 134, 145, 149 (referring to Halkbank's correspondent accounts in other contexts).

Plaintiffs' second theory of jurisdiction—that Halkbank is subject to jurisdiction based on the contacts of its "agents and fellow participants," SAC ¶ 17—is equally meritless.[11] Plaintiffs identify two former executives at Halkbank, Suleyman Aslan and Mehmet Hakan Atilla, but do not describe any New York contacts they had within the scope of their employment. The SAC is devoid of any facts suggesting Aslan or Atilla "purposefully directed" any activity at New York.[12]

Plaintiffs further claim that Zarrab was Halkbank's agent, but they allege no facts to support that claim. Plaintiffs' conclusory assertion of agency is a "legal conclusion couched as a factual allegation" that this Court should not "accept as true." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 673; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, a defendant may be subject to jurisdiction on an agency theory only if the agent "acted in New York" for the "benefit" of the principal, with the principal's "knowledge," and under the principal's "control." *Charles Schwab Corp.*

---

[11] The identity of the alleged "fellow participants" is not answered in the complaint and thus cannot serve as a basis for exercising personal jurisdiction over Halkbank.

[12] The allegation that Halkbank routed transactions though the "New York-based correspondent accounts *of its agents*" is nonsensical. SAC ¶ 17 (emphasis added). "A correspondent bank account is a domestic bank account held by a foreign bank." *Licci II*, 732 F.3d at 165 n.3. The individuals alleged to be Halkbank's agents are not foreign banks, and Plaintiffs do not plead facts establishing that they had New York correspondent accounts of their own.

*v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (quoting *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981)).  Plaintiffs make no such allegations regarding Zarrab.

Finally, to the extent Plaintiffs think jurisdiction exists here under the so-called "effects test," they would be wrong.  That theory applies where "the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff." *Licci II*, 732 F.3d at 173.  But the effects test requires that Halkbank took "intentional, and allegedly tortious, actions . . . *expressly aimed*" at New York.  *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d at 93 (emphasis added) (quoting *Calder*, 465 U.S. at 789); *see Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d Cir. 2016); *Licci II*, 732 F.3d at 173.  The SAC does not allege that Halkbank *expressly aimed* any intentional conduct at New York.  It alleges that Halkbank facilitated transfers between customer accounts that others then used to transfer money around the globe, a small portion of which passed through New York.  *E.g.*, SAC ¶¶ 94, 97, 140.  Even assuming that it was foreseeable that some of the funds of which Halkbank allegedly facilitated the transfer would eventually touch New York, "[m]ere foreseeability," even of "causing injury," in New York does not suffice for personal jurisdiction.  *Charles Schwab*, 883 F.3d at 87; *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d at 674; *see Burger King Corp.*, 471 U.S. at 474.

### B.      Plaintiffs Do Not Allege Personal Jurisdiction Over the CPLR 5225(b) Claim.

Plaintiffs' third claim does not relate to the alleged transfers to avoid sanctions.  It instead asks the Court to enforce Plaintiffs' judgments by ordering Halkbank to turn over any remaining assets of Iran in its possession.  SAC ¶ 173.  Here too, however, Plaintiffs fail to allege personal jurisdiction, even though "personal jurisdiction is the linchpin of authority under section 5225(b)." *N. Mariana Islands v. Can. Imperial Bank of Com.*, 990 N.E.2d 114, 120 (N.Y. 2013).

The Complaint does not explain why there is personal jurisdiction for a turnover proceeding seeking assets of Iran at Halkbank.  The allegations regarding Halkbank's correspondent accounts and

its alleged involvement in a sanctions scheme have no bearing on "the underlying controversy" of the turnover proceeding. *Licci II*, 732 F.3d at 169–70. The subject matter of the underlying controversy—the depositing of funds at Halkbank resulting from Iran's sales of gas and oil to Turkey—has no connection to New York (nor to the alleged fraudulent scheme). Plaintiffs have thus not alleged facts establishing personal jurisdiction for their turnover claim.

## III.   THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*.

If the Court determines that it does have jurisdiction, it should still dismiss the case under the doctrine of *forum non conveniens* in favor of a Turkish court. "The decision to dismiss a case on *forum non conveniens* grounds lies wholly within the broad discretion of the district court." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc). In exercising that "broad discretion," this Court "applies the three-step analysis" set out in *Iragorri*, 274 F.3d at 72–76. *Mayer v. Time, Inc.*, No. 17cv5613, 2018 WL 1738322, at *2 (S.D.N.Y. Apr. 9, 2018) (Cote, J.). Under this test, the Court considers:

> (1) the degree of deference to be afforded to the plaintiff's choice of forum; (2) whether there is an adequate alternative forum for adjudicating the dispute; and (3) whether the balance of private and public interests tips in favor of adjudication in one forum or the other.

*Id.* (internal quotation marks omitted). All three factors favor dismissal.

### A.   Plaintiffs' Decision To Sue in New York Is Not Entitled to Deference.

Plaintiffs' decision to sue Halkbank in this Court is not entitled to deference for four reasons. *First*, a majority of Plaintiffs are not United States residents, which "reduc[es] the overall deference accorded." *Wilson v. Eckhaus*, 349 F. App'x 649, 651 (2d Cir. 2009); *see* Ford Decl. ¶ 4 & Ex. A. Indeed, of the 876 Plaintiffs, it appears that more than 73% are from foreign countries. Ford Decl. ¶¶ 4–5 & Ex. A. *Second*, Plaintiffs' choice of forum merits less deference because "none of the operative facts" occurred in New York. *Wenzel v. Marriott Int'l, Inc.*, No. 13cv8335, 2014 WL 6603414, at *3 (S.D.N.Y. Nov. 17, 2014), *aff'd*, 629 F. App'x 122 (2d Cir. 2015); *see* SAC ¶¶ 88–100. *Third*, "the most pertinent

documentary and testimonial evidence exists in [Turkey]." *Wilson*, 349 F. App'x at 651; Sevimli Decl

¶ 12.  *Fourth*, Plaintiffs' filing suit in this district despite the events' transpiring in Turkey and the vast

majority of Plaintiffs' not being New York residents "giv[es] rise to a strong inference that forum-

shopping considerations served as a substantial motivation in [P]laintiffs' venue choice." *Türedi v.

Coca-Cola Co.*, 343 F. App'x 623, 625 (2d Cir. 2009).  Any deference to Plaintiffs' choice of forum

should accordingly be "substantially reduced." *Mayer*, 2018 WL 1738322, at *4.

### B.      Turkey Is an Adequate Forum for This Dispute.

"An alternative forum is adequate if the defendants are amenable to service of process there,

and if it permits litigation of the subject matter of the dispute." *Türedi*, 343 F. App'x at 625 (quoting

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 145, 157 (2d Cir. 2005)).  Conversely, a forum may

be deemed inadequate if it is "characterized by a complete absence of due process or an inability of

the forum to provide substantial justice." *Id.* at 625–26.  A forum is not inadequate, however, "simply

because it does not afford plaintiffs the identical causes of action or relief available in" the plaintiffs'

chosen forum. *Kingstown Capital Mgmt., L.P. v. Vitek*, No. 19cv3170, 2020 WL 5350492, at *8 (S.D.N.Y.

Sept. 4, 2020) (Cote, J.).  Turkey is clearly an adequate alternative forum.  *Türedi*, 343 F. App'x at 626.

Here, Halkbank has stated that "[i]f Plaintiffs commence litigation arising out of the

circumstances and general claims asserted in this case in an appropriate Turkish court, Halkbank will

accept service in Turkey, and will accept an appropriate Turkish court's exercise of personal

jurisdiction."  Sevimli Decl. ¶ 10; *see Türedi*, 343 F. App'x at 626.  "Halkbank has not ever failed to

satisfy a final judgment issued by a Turkish court."  Sevimli Decl. ¶ 11.  Such representations

demonstrate that Turkey is an adequate alternative forum.  *See, e.g.*, *Aguinda v. Texaco, Inc.*, 303 F.3d

470, 475–76 (2d Cir. 2002).

Further, as in *Türedi*, Halkbank has provided declarations from an expert in Turkish

commercial law and the law of obligations, who attests that Turkish law "contains various substantive

provisions and procedures under which Plaintiffs can pursue claims and obtain remedies" for the conduct alleged here. *Türedi*, 343 F. App'x at 626; *see* Kurşat Decl. ¶¶ 8–31. Prof. Kurşat explains that U.S. judgment creditors can execute their judgments in Turkey, including through turnover proceedings, Kurşat Decl. ¶¶ 8–13, including in many instances against the property of a foreign state, *id.* ¶¶ 14–14a. The professor further identifies three distinct legal theories available to Plaintiffs in Turkey—collusion, cancellation of a discretionary disposition, and tort—that, like fraudulent transfer claims, permit creditors to sue third-party transferees under certain circumstances to set aside and recover for property transfers that fraudulently diminish a debtor's estate. *Id.* ¶¶ 15–35.

Finally, an expert in Turkish administrative law explains the independence of Turkish courts, including by providing recent examples of Turkish courts ruling against the government—including striking down a presidential decree in June. Yasin Decl. ¶¶ 1.1–1.6; *see also* Sevimli Decl. ¶ 9 (Halkbank can be sued in Turkey and is not afforded any special immunities). Unsurprisingly, courts have repeatedly found Turkey to be an adequate alternative forum, including the Second Circuit as recently as 2009. *Türedi*, 343 F. App'x 623; *see also Mercier v. Sheraton Int'l., Inc.*, 981 F.2d 1345, 1350–54 (1st Cir. 1992) (rejecting alleged inadequacies of Turkish courts in context of *forum non conveniens* dismissal).

## C.   Private and Public Interests Factors Strongly Favor Dismissal.

The third step is the balancing of private and public interests to determine whether adjudication is more appropriate in New York or Turkey. *See Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 74–75 (2d Cir. 2003). Analysis of both sets of factors favors dismissal.

### 1.   Private Interest Factors Favor Dismissal.

Litigating this case in Turkey provides easier access to evidence, eliminates discovery issues, and decreases costs. *See Iragorri,* 274 F.3d at 73–74 (detailing private interest factors). "Any relevant and discoverable documents in this case from Halkbank's files are located in Turkey and written in Turkish." Sevimli Decl. ¶ 12; *see Wilson*, 349 F. App'x at 652; *Türedi v. Coca Cola Co.*, 460 F. Supp. 2d

507, 526 (S.D.N.Y. 2006) (focusing inquiry on "factual record of the events most central to the action"), *aff'd*, 343 F. App'x 623 (2d Cir. 2009). "Halkbank witnesses"—and presumably third-party witnesses—"are likely located in Turkey," Sevimli Decl. ¶ 12, "many will not speak English," "many have never traveled to the United States," *id.*, and many witnesses are likely beyond the Court's subpoena power. *Kingstown*, 2020 WL 5350492, at *10. Moreover, litigating Plaintiffs' claims "in this country will add enormously to the expense of the litigation," including travel and translation costs. *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493, 500 (S.D.N.Y. 2007) (Cote, J.). Plaintiffs, who are scattered across the globe, can just as easily litigate this case in Turkey, and there is no evidence "they will be unable to afford the cost of pursuing their claims in [Turkey]." *Wilson v. ImageSat Int'l N.V.*, No. 07cv6176, 2008 WL 2851511, at *7 (S.D.N.Y. July 22, 2008) (Cote, J.).

### 2. Public Interest Factors Favor Dismissal.

The balance of "public interest factors" also favor dismissal. Turkish law will likely govern this dispute, *see* pp.22–25, *infra*, which "weighs heavily in a *forum non conveniens* determination." *Spencer Stuart Human Res. Consultancy (Shanghai) Co. v. Am. Indus. Acquisition Corp.*, No. 17cv2195, 2017 WL 4570791, at *5 (S.D.N.Y. Oct. 12, 2017) (Cote, J.); *see Esheva*, 499 F. Supp. 2d at 500. Indeed, a purpose of *forum non conveniens* is to "help courts avoid conducting complex exercises in comparative law." *Spencer Stuart*, 2017 WL 4570791, at *5 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 251 (1981)); *see Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996).

Additionally, Turkey has a "meaningful interest in hearing this dispute" involving a very large domestic bank with more than 1,000 branches in Turkey. *Spencer Stuart*, 2017 WL 4570791, at *5; Sevimli Decl. ¶ 4. Turkey has a strong interest in ensuring that Halkbank's "affairs . . . are conducted with integrity and that its judicial system deals efficiently and fairly with complaints." *Wilson*, 2008 WL 2851511, at *7. In contrast, "the United States and New York have, at best, a weak interest." *Id.*

"[O]ur courts and juries have minimal interest in expending their resources" on a foreign dispute between overwhelmingly foreign plaintiffs and a foreign defendant involving foreign conduct. *Id.*

The balance of interests tips particularly in favor of dismissal on *forum non conveniens* grounds as to Plaintiffs' turnover claims. *See* SAC ¶¶ 171–82. As Professor Siegel notes, the *forum non conveniens* doctrine is particularly suited to addressing turnover claims aimed at foreign assets. David D. Siegel, *"Koehler": Creating Mecca for Creditors or Anti–Mecca for Garnishees?*, N.Y.L.J., July 28, 2009, at 4. Plaintiffs' two turnover claims ask this Court to reach out and order Halkbank to transfer to Plaintiffs "any Iranian assets that remain in the possession of Halkbank." SAC ¶ 173; *see id.* ¶ 182 (similar). Any such assets would be in Turkey. Take, for example, Plaintiffs' third claim under CPLR 5225(b). Here, Plaintiffs have not pleaded personal jurisdiction for that claim. *See* pp.14–15, *supra*. But even if they had, *see Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825 (N.Y. 2009), there is no reason for a federal court in New York to decide when and whether a Turkish bank should turn over assets in Turkey of a foreign (and neighboring) sovereign state. Siegel, *supra*. Turkey has its own proceedings that resemble turnover claims, and there is no obvious bar to Plaintiffs' initiating such proceedings in Turkey. *See* Kurşat Decl. ¶¶ 8–14a. Such a practice would respect Turkey's "strong interest in bank regulation and the enforcement of foreign judgments." *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 597 (S.D.N.Y. 2011).

The Court should exercise its discretion to dismiss on *forum non conveniens* grounds.

## IV.    PLAINTIFFS FAIL TO STATE FRAUDULENT CONVEYANCE CLAIMS.

For the foregoing reasons, the Court need not reach the substance of Plaintiffs' claims. But if it does, the claims should be dismissed. Plaintiffs' principal claims are for fraudulent conveyance. Plaintiffs first assert a claim for constructive fraudulent conveyance under DCL § 273-a, under which creditors can set aside a "conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against

him," if "after final judgment for the plaintiff, the defendant fails to satisfy the judgment."  Pointing to the transfers allegedly undertaken as part of Zarrab's scheme, Plaintiffs claim that those transfers were made without fair consideration because the transactions between customer accounts lacked an exchange of reasonably equivalent value, and Halkbank did not effectuate them in good faith due to its alleged knowledge that Iran sought to evade sanctions and Plaintiffs' judgments.  SAC ¶¶ 143–58.  Plaintiffs' second claim is for intentional fraudulent conveyance under DCL § 276, which permits plaintiffs to set aside transactions that the transferor engaged in "with actual intent . . . to hinder, delay, or defraud either present or future creditors."  SAC ¶¶ 159–70.

Both these claims are fatally flawed and should be dismissed.  To begin with, New York law should not apply to Halkbank's conduct in Turkey at all.  Plaintiffs seek an improper extraterritorial application of New York law.  At the very least, the Court needs to undertake a choice-of-law analysis, and the application of that standard points to Turkish fraudulent conveyance law.  But, if New York law applies, the claims fail at the threshold, because Halkbank was neither a transferee nor beneficiary of any transfers and, thus, cannot be sued for fraudulent conveyance.  Finally, Plaintiffs' allegations regarding these claims fail to state either constructive or actual-intent fraudulent conveyance claims.  At bottom, Plaintiffs are attempting to graft alleged violations of a sanctions regime onto fraudulent conveyance law.  And that grafting is unsuccessful.

## A.    New York's Fraudulent Conveyance Statutes Do Not Apply Outside New York.

Plaintiffs have premised their fraudulent conveyance claims on New York's Debtor & Creditor Law (DCL)—despite the fact that the every aspect of the transfers involving Halkbank occurred in another country.  SAC ¶¶ 86–100.  This fact is fatal to Plaintiffs' claims because New York's fraudulent conveyance statutes do not apply extraterritorially.

New York recognizes "the settled rule of statutory interpretation, that unless expressly stated otherwise, no legislation is presumed to be intended to operate outside the territorial jurisdiction of

the state enacting it." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 730 N.Y.S.2d 46, 47 (App. Div. 2001), *aff'd*, 774 N.E.2d 1190 (N.Y. 2002) (internal quotation marks omitted); *see Glob. Reinsurance Corp. v. Equitas Ltd.*, 969 N.E.2d 187, 195 (N.Y. 2012); *Rodriguez v. KGA Inc.*, 64 N.Y.S.3d 11, 12–13 (App. Div. 2017). The New York Legislature has codified the presumption that the "laws of one state can have no force and effect in the territorial limits of another jurisdiction." N.Y. Stat. Law § 149 (McKinney). When a statute does not apply extraterritorially, a party "must allege . . . acts or practices which took place in New York State" in order to assert that a defendant's actions are governed by New York law. *Goshen*, 730 N.Y.S.2d at 47; *see Rodriguez*, 64 N.Y.S.3d at 13.

The New York Debtor & Creditor Law nowhere suggests that it applies extraterritorially. *See* DCL §§ 273-a, 276 (2019). If the New York Legislature wished to legislate a global cause of action for fraudulent conveyance occurring anywhere in the world, it would have said so. *See Armada (Singapore) Pte. v. Amcol Int'l Corp.*, 244 F. Supp. 3d 750, 757 (N.D. Ill. 2017) (holding Illinois fraudulent conveyance statute does not apply extraterritorially), *aff'd*, 885 F.3d 1090 (7th Cir. 2018). Plaintiffs have in the past relied on a footnote in *Eclaire Advisor Ltd. v. Daewoo Engineering & Construction Co.*, which states that the "contention that the New York Fraudulent Conveyance Statute ought not to be given extraterritorial application is unfounded." 375 F. Supp. 2d 257, 268 n.4 (S.D.N.Y. 2005); *see* ECF No. 24, at 12. The *Eclaire* court appears to have reached that conclusion by relying on choice-of-law cases. *See* 375 F. Supp. 2d at 268 n.4 (citing *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94cv5620, 1999 WL 64283, at *5–6 (S.D.N.Y. Feb. 8, 1999) (conducting choice-of-law analysis); *Elgin Sweeper Co. v. Melson Inc.*, 884 F. Supp. 641, 650 n.12 (N.D.N.Y. 1995) (same)). The statutory interpretation question posed by extraterritoriality, however, is different. It is whether the phrase "[e]very conveyance" in DCL § 273-a and § 276 is meant to refer to conveyances in Turkey (or anywhere else in the world), rather than conveyances in New York.

To the extent *Eclaire* stands for the proposition that the DCL applies to extraterritorial transfers that are "directed towards New York," as Plaintiffs have contended, *see* ECF No. 24, at 12, that does not support an extraterritorial application here.  Plaintiffs allege transfers that only temporarily passed through New York correspondent accounts on their way to foreign countries like China and Indonesia.  *See* SAC ¶¶ 94, 140.  The transfers (in which Halkbank did not participate) *passed through* New York; they were not "*directed towards* New York."[13]

### B.      Turkish Law Should Govern Plaintiffs' Fraudulent Conveyance Claims.

Where, as here, a federal court sits in diversity, "it applies the choice of law rules of the forum state, here New York."  *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014).  Under New York's choice-of-law principles, Turkish law governs.  Plaintiffs' New York claims should therefore be dismissed.

The first step in analyzing "a potential choice of law issue" under New York Law "is to determine whether there is an actual conflict between the laws of the jurisdictions involved."  *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006) (quoting *In re Allstate Ins. Co.*, 613 N.E.2d 936, 937 (N.Y. 1993)).  Here, such a conflict exists.  Turkish law recognizes three legal doctrines that resemble New York fraudulent conveyance claims:  collusion, cancellation, and tort.  *See* Kurşat Decl. ¶¶ 15–31.  But each of those theories has elements that contrast with Plaintiffs' constructive fraudulent-conveyance claim under DCL § 273-a and actual-intent fraudulent-conveyance claim under DCL § 276.  Most directly, unlike New York law, each Turkish

---

[13] The *Eclaire* court appears to have concluded that the transfers in that case were directed at New York because the plaintiff was injured there.  *See* 375 F. Supp. 2d at 268.  That reasoning would not help Plaintiffs here, given that they do not allege they are New York residents.  In fact, it appears that only 9 Plaintiffs are New York residents.  *See* Ford Decl. ¶ 4 & Ex. A.  In any event, the *Eclaire* court did not have the benefit of the Second Circuit's clarification in *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155 (2d Cir. 2012) ("*Licci I*"), that the location of the allegedly tortious conduct is more significant in choice-of-law analyses for conduct-regulating tort claims.  *See* pp.23–24, *infra*.

doctrine requires wrongful intent by the recipient of the funds—i.e., Halkbank. *See id.* ¶ 18 (collusion), ¶ 23 (cancellation), ¶ 29 (tort).  That difference, and others, suffice to show an "actual" conflict.

Next, a court must determine whether the "center of gravity" analysis or "interest" analysis test applies, which turns on the nature of claims asserted.  *GlobalNet*, 449 F.3d at 383–85.  Here, because New York law treats "fraudulent conveyance as a tort," the "interest analysis" test applies.  *In re JVJ Pharmacy Inc.*, No. 16cv10508, 2020 WL 4251666, at *6 (Bankr. S.D.N.Y. July 24, 2020) (alteration and citation omitted); *see Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 664 (S.D.N.Y. 2012).  Under this test, a court applies the law of the jurisdiction with the "greater interest in having its law applied in the litigation." *In re JVJ*, 2020 WL 4251666, at *6 (quoting *Padula v. Lilarn Properties Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994)).  This requires determining: (1) "what are the significant contacts and in which jurisdiction are they located," and (2) "whether the purpose of the law is to regulate conduct or allocate loss."  *Id.*

"In all interest analyses, 'the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort.'"  *Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996).  Here, as in *In re JVJ Pharmacy*, the "first inquiry is easy," because "the only significant contacts [are] in [Turkey]"— Halkbank "resides in [Turkey]," the core allegations concern events in Turkey, the alleged fraudulent conveyances were "initiated" in Turkey, and Halkbank has "no significant contacts with New York." 2020 WL 4251666, at *7.  Few Plaintiffs are domiciled in New York; a majority do not appear to be United States residents at all.  Ford Decl. ¶¶ 4–5 & Ex. A.  And while Plaintiffs allege that Halkbank maintains correspondent bank accounts in New York, Plaintiffs nowhere link these accounts to the core allegations concerning fraudulent conveyances.

Although the "second inquiry is less straightforward," *id.*, the outcome is no less clear.  Under this Court's jurisprudence, fraudulent conveyance laws "regulate[] conduct."  *Paradigm BioDevices*, 842 F. Supp. 2d at 665; *see JVJ*, 2020 WL 4251666, at *7.  The Second Circuit instructs that, when analyzing

conduct-regulating laws, "the law of the jurisdiction *where the tort occurred* will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir. 2012) ("*Licci I*") (emphasis added) (quoting *GlobalNet*, 449 F.3d at 384); *Paradigm BioDevices*, 842 F. Supp. 2d at 665 (same).  Thus, in the "fraudulent conveyance context," it is "well-settled" that "the location of the injury does not control; instead, it is the location of the defendant's conduct that controls."  *Lyman Com. Sols., Inc. v. Lung*, No. 12cv4398, 2014 WL 476307, at *3 (S.D.N.Y. Feb. 6, 2014); *see In re JVJ Pharmacy Inc.*, 2020 WL 4251666, at *7.[14]

To the extent Plaintiffs contend that Halkbank's alleged conduct "occurred" in New York, they would be wrong.  Under the interest analysis test, it is "clear" that "the jurisdiction where the tort occurred" is the one "in which the defendant engaged in the behavior that the conduct-regulating rule seeks to deter."  *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 335 (S.D.N.Y. 2012) (Cote, J.), *aff'd*, 712 F.3d 136 (2d Cir. 2013).  Here, that jurisdiction is "undisputedly" Turkey, where the alleged schemes and fraudulent conveyances "that are at the center of this litigation" supposedly occurred.  *Id.* (conduct "occurred" "where the defendants prepared and disseminated the allegedly misleading offering materials").

Because the location of Halkbank's alleged conduct controls, New York choice of law principles strongly favor application of Turkish law, *Licci I*, 672 F.3d at 158, but this "general rule is not determinative," and the "core inquiry remains one of interest balancing."  *Kashef v. BNP Paribas SA*, 442 F. Supp. 3d 809, 818–819 (S.D.N.Y. 2020).  As *Kashef* shows, that balancing favors application of Turkish law.  *Kashef* involved conduct-regulating tort claims brought by victims of Sudanese abuse against BNP Paribas S.A. ("BNPP") for its "illicit and fraudulent financial practices that allowed the

---

[14] Although some courts still apply a "place-of-injury rule" to choice-of-law issues regarding fraudulent conveyance law, *see, e.g.*, *Integrity Elecs., Inc. v. Garden State Distribs., Inc.*, No. 14cv3197, 2016 WL 3637004, at *5 (E.D.N.Y. June 30, 2016), those cases are inconsistent with *Licci I*, 672 F.3d 155, and are not relevant to Plaintiffs' claims, *see* p.22 n.13, *supra*.

Sudanese government to evade American sanctions."  *Id.* at 813.  Those practices included BNPP itself "clearing [money] through New York," including through "its own New York branch," but those transactions, the court reasoned, provided only a "minor connection" to New York, given that the "conduct in Switzerland [was] at the heart of th[e] litigation."  *Id.* at 820.  The same is true here—the heart of the litigation concerns Halkbank's alleged conduct in Turkey, not transactions in New York.

Accordingly, if the Court does not dismiss the SAC on other grounds, it should dismiss Plaintiffs' fraudulent conveyance claims and order them to replead under Turkish law.  *See Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019).

## C.  Halkbank Was Not a Transferee or Beneficiary of Iran's Conveyances Under New York Law.

Plaintiffs do not and cannot allege that Halkbank was either a transferee or beneficiary, as defined by New York law, of the bank transfers at issue.  This is fatal to both of Plaintiffs' fraudulent conveyance claims.  Under *Wilds v. Lebanon National Bank*, 220 N.Y.S. 480, 484 (App. Div.), *aff'd*, 245 N.Y. 629 (1927), New York law does not allow fraudulent conveyance claims against a bank acting "[as] a depository."  *Fundación Presidente Allende v. Banco de Chile*, No. 05cv9771, 2006 WL 2796793, at *3 (S.D.N.Y. May 29, 2006), *vacated on mootness grounds on appeal*, No. 06cv5002 (2d Cir.) (quoting *Wilds*, 220 N.Y.S. at 484).  When funds are moved from one account to another, or money is deposited in a bank account, the bank itself is "*not a transferee*" of funds.  *Wilds*, 220 N.Y.S. at 484 (emphasis added). The *account holders* "[are] the transferee[s]."  *Id.*  Accordingly, "[a] bank's actions, in connection with the withdrawal and/or transfer of the debtor's assets, cannot give rise to a claim of fraudulent conveyance against it."  *Fundación*, 2006 WL 2796793, at *3.

Nor is a depository bank a "beneficiary" of transfers it effects between others' accounts. Again, the beneficiary of the conveyance is the person or entity to whose account the funds have been moved.  A bank merely moving funds between two of its customers' accounts does not become a beneficiary of the transfer unless it "divert[s] the funds for the bank's own use."  *Fundación*, 2006 WL

25

2796793, at *3.  When a bank transfers assets between customer accounts, it does not gain "dominion or control over the assets," and thus does not "derive[] any benefit from the conveyance."  *Id.*  On Plaintiffs' allegations, the transferees and beneficiaries would be Zarrab, Iranian banks, and possibly Iran itself—not Halkbank.  *See, e.g.*, SAC ¶¶ 93–94, 97–98.

In the past, Plaintiffs have sought to overcome this authority on two grounds.  Plaintiffs have asserted that Halkbank should be considered a transferee because it allegedly acted as "the mastermind behind and knowing conduit for fraudulent conveyances."  ECF No. 24, at 14 n.5.  Plaintiffs have also suggested that Halkbank was a "beneficiary" of the fraudulent conveyances because it received commissions for its banking services.  *Id.* at 14.  Both arguments are meritless.

*First*, the notion that a depository bank becomes liable for fraudulent conveyance if it serves as a "mastermind" and "knowing conduit" to a debtor's fraudulent conveyance misstates fraudulent conveyance law.  As the dissent noted in *Wilds*, the knowledge or good faith of a defendant are subsequent possible defenses to the claim; they are not relevant to the question of whether the defendant is a transferee.  220 N.Y.S.2d at 485 (Proskauer, J., dissenting).  The *Wilds* majority no doubt understood that when they pronounced that it was the customers "who were the transferees," not the bank.  *Wilds*, 220 N.Y.S.2d at 484.  "The bank was not a transferee.  It was merely a depository."  *Id.*  And a creditor does not have a claim "against nontransferees or nonbeneficiaries solely for assisting in the conveyance of a debtor's assets."  *Fed. Deposit Ins. Corp. v. Porco*, 552 N.E.2d 158, 159 (N.Y. 1990); *see, e.g.*, *Amusement Indus., Inc. v. Midland Ave. Assocs.*, 820 F. Supp. 2d 510, 533 (S.D.N.Y. 2011).

*Fundación* illustrates the point.  That case involved transactions allegedly designed and executed by Banco de Chile to hide Augusto Pinochet's assets. As in this case, the creditor plaintiff alleged that Banco de Chile "received Pinochet's money . . . , transferred funds among [various] accounts, and transferred some funds through third parties in a manner that permitted [the bank] to hide the identity of the originators of the funds, all with the intent and knowledge that these actions were assisting

Pinochet to conceal and move funds in order to hinder, delay, and defraud creditors." Compl. ¶ 40, *Fundación*, 2005 WL 3655859 (S.D.N.Y. Nov. 18, 2005). Despite these allegations, the fraudulent conveyance claim was dismissed because a "bank's actions, in connection with the withdrawal and/or transfer of the debtor's assets, cannot give rise to a claim of fraudulent conveyance against it because the bank was not acting as a transferee, but rather was merely a depository." *Fundación*, 2006 WL 2796793, at *3 (alteration and internal quotation marks omitted).

*Second*, Plaintiffs argue that Halkbank was a "beneficiary" of Iran's conveyances because Halkbank allegedly received commissions of about 1% for the banking services it performed on Iran's behalf. SAC ¶ 129.[15] This theory was squarely rejected by another court in this district in *Villoldo v. BNP Paribas S.A.*, Nos. 14cv9930, 15cv268, 15cv496, 2015 WL 13145807, at *3 (S.D.N.Y. July 21, 2015), *aff'd*, 648 F. App'x 53 (2d Cir. 2016). There, judgment creditors brought fraudulent conveyance claims against banks, alleging that the banks were beneficiaries of fraudulent conveyances when they failed to block transactions by a sanctioned country (Cuba) in the U.S. financial system because they received "fees" for their services. *Id.* at *2–3. The court explained, however, that "charging and collecting substantial fees and commissions" "does not make a party liable for fraudulent conveyance," even though plaintiffs alleged the banks "'*were beneficiaries*.'" *Id.* at *3 (emphasis added, quoting complaint). Indeed, receiving compensation in connection with an alleged fraudulent conveyance does not make a party a "beneficiary." *See, e.g.*, *Roselink Invs., L.L.C, v. Shenkman*, 386 F. Supp. 2d 209, 227 (S.D.N.Y. 2004) ("receipt of a salary . . . is not sufficient to render the officer a transferee or beneficiary of the transfer"); *Cantor Fitzgerald & Co. v. 8an Cap. Partners Master Fund, L.P.*, 16 N.Y.S.3d 733, 734 (App. Div. 2015).

---

[15] A 1% commission on banking services involving an Iranian party is not unusual in international banking. *See* European Council on Foreign Relations, *Trading with Iran via the special purpose vehicle: How it can work* (Feb. 7, 2019), https://tinyurl.com/ecfrarticle ("Currently, banks that facilitate payments to and from Iran *typically charge 2–3 percent* of the transaction's value." (emphasis added)).

### D.      Plaintiffs Do Not Adequately Plead Their Fraudulent Conveyance Claims.

Plaintiffs' two fraudulent conveyance claims are subject to different pleading standards.  While the constructive fraudulent conveyance claim under DCL § 273-a is subject to Rule 8, the intentional fraudulent conveyance claim under DCL § 276 is subject to the heightened standards of Rule 9(b). Neither claim, however, is adequately pleaded.

### 1.      Plaintiffs Fail To Plead a Claim Under DCL § 273-a.

Although Plaintiffs' DCL § 273-a claim is not subject to Rule 9(b), Plaintiffs still must plead sufficient facts to state a claim that is plausible.  *E.g.*, *Iqbal*, 556 U.S. at 678.  The critical inquiry is whether a pleading contains "*nonconclusory* factual content raising a *plausible* inference of misconduct." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (emphasis in original).  Here, Plaintiffs have failed to plead lack of fair consideration, which is an essential element of their constructive fraudulent conveyance claim.  *Amusement Indus.*, 820 F. Supp. 2d at 527–28.  Fair consideration is absent when a transaction lacks (1) a "fair equivalency of the consideration given" or (2) a defendant's "good faith." *Id.* at 527.  Plaintiffs do not plausibly allege either.

*First*, Plaintiffs fail to adequately plead the lack of a fairly equivalent exchange of value. Plaintiffs primarily allege that certain intermediate transfers were unnecessary or even fictitious.  SAC ¶¶ 94.d, 97.  But, as the Second Circuit has explained, complex, multi-part transactions often should be "'*collapsed' and treated as phases of a single transaction* for analysis under" DCL § 273-a.  *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635 (2d Cir. 1995) (emphasis added).  A factfinder should examine the multi-part transfer as "a single transaction" and determine "whether, as a result of the transaction, the debtor's estate was unfairly diminished."  *Id.* (quoting 1 Garrard Glenn, *Fraudulent Conveyances and Preferences* § 275, at 471 (1940)).

28

Here, viewed as a whole, Zarrab's scheme did not fraudulently alienate Iran's property or diminish Iran's estate; on the contrary, Plaintiffs allege that Iran used the transactions for purposes such as the "repayment of pre-existing debts." *Id.* at 634. The theory is not that Iran and Zarrab arrived at a way to diminish Iran's funds to frustrate creditors, but rather a way to launder Iran's funds so that it could use them "in all kinds of foreign payments for Iran." SAC ¶ 89. Unless those "foreign payments" were for less than an equivalent value, there is no fair-equivalency problem. While Plaintiffs allege that these transactions violated U.S. sanctions or involved fraudulent paperwork, there is no basis to infer that the counterparties did not receive equivalent value to what they provided.

Plaintiffs also fail to plausibly allege a lack of good faith by Halkbank. The Second Circuit has held that Section 273-a's "good faith" requirement should be construed narrowly. *See HBE Leasing*, 48 F.3d at 636. The test is whether Halkbank "*knew, or should have known*, that [Iran] was not trading normally, but that . . . *the purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors*." Glenn, *supra* § 295, at 512 (emphasis added); *HBE Leasing*, 48 F.3d at 636 (quoting treatise and stating "UFCA requirement of 'good faith' refers *solely*" to that test (emphasis added) (emphasis omitted)); *see Gowan v. Westford Asset Mgmt. LLC (In re Dreier LLP)*, 462 B.R. 474, 489 (Bankr. S.D.N.Y. 2011).

Plaintiffs provide no factual allegations to support an inference that Halkbank knew or had reason to know that Iran was evading these judgment creditors, or that evading creditors was Iran's intent. Plaintiffs rely instead on conclusory assertions that Halkbank and Iran acted to avoid satisfying Plaintiffs' judgments. *See, e.g.*, SAC ¶¶ 12–14. But such conclusory allegations fail to meet Plaintiffs' burden. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 46, 53, 54 (2d Cir. 2005) (affirming dismissal of fraudulent conveyance claims where plaintiff did not "ple[a]d facts" "adequately to allege a lack of fair consideration" (internal quotation marks omitted)).

### 2. Plaintiffs Fail To Plead a Claim Under DCL § 276.

The heightened pleading standard of Rule 9(b) has two significant applications to Plaintiffs'
DCL § 276 claim: (1) Plaintiffs must provide specific allegations describing the transfers they allege
were fraudulent, *e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 104 (Bankr. S.D.N.Y. 2011);
and (2) Plaintiffs must plead intent with specificity, providing specific allegations "supporting general
allegations of actual intent to hinder, delay, or defraud," *Ray v. Ray*, 799 F. App'x 29, 31–32 (2d Cir.
2020) (internal quotation marks omitted).  Plaintiffs have done neither.

*First*, in the context of a DCL § 276 claim, Rule 9(b) requires that for each allegedly fraudulent
conveyance a party must allege: "(1) the property subject to the transfer, (2) the timing and, if
applicable, frequency of the transfer and (3) the consideration paid with respect thereto." *In re Bernard
L. Madoff*, 458 B.R. at 106 (internal quotation marks omitted); *see United Feature Syndicate, Inc. v. Miller
Features Syndicate, Inc.,* 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002).  Plaintiffs have provided no such
detail here.  In only two instances do Plaintiffs identify specific ultimate transferees and specific
amounts of money—and, there, they do not describe any of the particular intermediate transfers for
their claim.  *See* SAC ¶¶ 140.  Instead, Plaintiffs make allegations about the structure of the transfers.
*See* SAC ¶¶ 88–100.  Because the SAC "aggregates the transfers into lump sums over three to five year
time periods [and] does not, with respect to each transaction, specify the mechanism of transfer," the
DCL § 276 claim should be dismissed.  *Fed. Nat'l. Mortg. Ass'n v. Olympia Mortg. Corp.,* No. 04cv4971,
2006 WL 2802092, at *9 (E.D.N.Y. Sept. 28, 2006); *see, e.g.*, *In re M. Fabrikant & Sons, Inc.*, 394 B.R.
721, 734 (Bankr. S.D.N.Y. 2008).

*Second*, Plaintiffs are required to provide specific allegations that the transferor intended to
hinder, delay, or defraud creditors.  *Ray*, 799 F. App'x at 31–32; *Sharp*, 403 F.3d at 56; *see* DCL § 276.
It is not sufficient that harm to creditors may have been foreseeable.  *MFS/Sun Life Tr.-High Yield
Servs. v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 936 (S.D.N.Y. 1995).  Plaintiffs do not make

those factual allegations here.  They instead allege conduct to avoid sanctions, not creditors.  *See*, *e.g.*, SAC ¶¶ 1, 85, 138.  But trying to avoid sanctions limitations is not correlated with avoiding Plaintiffs' judgments.  If anything, the alleged sanctions evasion could not have been to evade U.S. creditors because the only way even 5% of the alleged transfers entered the U.S. system (and thus at all available to Plaintiffs in the United States) is because of the alleged scheme.

Plaintiffs may try to show that those allegations support the presence of certain so-called "badges of fraud."  *Sharp*, 403 F.3d at 56.  But while such "badges" often can provide circumstantial inferences of an intent to defraud, their inferential force is much diminished when a plaintiff alleges other wrongdoing, as Plaintiffs do here.  *See id.* at 56–57.  "[I]t cannot be assumed that a wrongdoer is part of another fraud merely because of his other bad acts."  *In re Arctrade Fin. Techs. Ltd.*, 337 B.R. 791, 810 (Bankr. S.D.N.Y. 2005).  Plaintiffs cannot convert alleged evasion of sanctions into an intent to avoid their default judgments.

## V.  PLAINTIFFS' TURNOVER CLAIMS SHOULD BE DISMISSED.

Unlike Plaintiffs' fraudulent conveyance claims, which seek compensation from Halkbank, Plaintiffs' third and fourth claims seek turnover of any remaining Iranian assets in Halkbank accounts. SAC ¶¶ 173, 182.  The third claim is brought under a New York provision, CPLR 5225(b), which provides a means under certain circumstances for a judgment creditor to require a bank to turn over assets of a judgment creditor.  *See, e.g.*, *N. Mariana Islands*, 990 N.E.2d at 114.  The fourth claim is brought under § 201(a) of the federal Terrorism Risk Insurance Act, which provides that "the blocked assets of [a] terrorist party" will be available for execution to a judgment creditor.  *See* SAC ¶ 173; TRIA § 201(a), 116 Stat. 2337, *note following* 28 U.S.C. § 1610.  Both claims are deficient, *see infra*, but they also suffer from the same initial flaws:  they seek turnover of assets located in a foreign jurisdiction and, indeed, belonging to another foreign sovereign.  Accordingly, both claims should be dismissed on international comity grounds and for lack of authority under the FSIA.

*First*, the doctrine of international comity "refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 139 (2d Cir. 2014) (internal quotation marks omitted). International comity encompasses both "prescriptive comity," wherein "the reach of a statute" is shortened "out of respect for foreign sovereigns," and "adjudicatory comity," described as "a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state." *In re Picard*, 917 F.3d 85, 101 (2d Cir. 2019). In conducting a comity analysis, the Court should "us[e] the framework provided by § 403 of the Restatement (Third) of Foreign Relations Law," *Gucci*, 768 F.3d at 139.

Plaintiffs' turnover claims ask the Court to order Halkbank, a Turkish corporation, to turn over assets of bank customers in Turkey. That is, "the activity takes place within the territory" of *Turkey*, not the United States. Restatement (Third) of Foreign Relations Law § 403(2)(a) (Am. Law Inst. 1987). It is "undoubtedly true" that Turkey has an important and "strong interest in bank regulation and the enforcement of foreign judgments" within its own borders. *JW Oilfield*, 764 F. Supp. 2d at 597; *see* Restatement § 403(2)(c), (e), (g). Further, as set forth in the declaration of Professor Kurşat at ¶ 14, there is a risk that unless this Court dismisses the turnover claims, there will be a true and unavoidable conflict between United States and Turkish law regarding Plaintiffs' turnover claims. Restatement § 403(2)(h); *see Picard*, 917 F.3d at 102 (describing conflict as requirement for at least prescriptive comity analysis). Under Turkish law, for example, Iranian assets held in Halkbank's accounts are immune from turnover claims unless Plaintiffs, *inter alia*, provide proper notice to Iran *and* a Turkish court analyzes the assets and deems them proper for turnover. *See* Kurşat Decl. ¶¶ 12–14. Haling Halkbank into a New York court to collect a sovereign's assets located in Istanbul is not "consistent with the traditions of the international system," Restatement (Third) of

Foreign Relations Law § 403(2)(f), and risks harming "justified expectations," *id.* § 403(2)(d).  The Court should dismiss these claims as a matter of both prescriptive and adjudicative comity.

*Second*, because the assets are in Turkey, Plaintiffs lack a statutory basis to request turnover. Under the FSIA, "[i]mmunity from attachment and execution of property of a foreign state" operates separately from "[i]mmunity of a foreign state from jurisdiction."  *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 286 (2d Cir. 2011) (alteration in original).  Assets of a foreign state located abroad are immune.  *See, e.g.*, *Rubin v. Islamic Republic of Iran*, 830 F.3d 470, 475 (7th Cir. 2016) (foreign sovereign assets "must be within the territorial jurisdiction of the district court" to be subject to execution), *aff'd*, 138 S. Ct. 816 (2018).[16]  Attempting to circumvent this immunity, Plaintiffs invoke a statutory exception—28 U.S.C. § 1610(a), *see* SAC ¶ 76—but that statute applies only to "[t]he property *in the United States* of a foreign state."  28 U.S.C. § 1610(a) (emphasis added).  The statute does not provide an exception to immunity for property *outside* the United States.

The same problem dooms Plaintiffs' TRIA claim.  That statute "provides an additional exception to execution immunity for property that the statute defines as 'blocked assets.'"  *Wyatt v. Syrian Arab Republic*, 83 F. Supp. 3d 192, 195 (D.D.C. 2015).  TRIA defines the term "blocked asset" as "any asset *seized or frozen by the United States* under [the International Emergency Economic Powers Act (IEEPA)]."  TRIA § 201(d)(2) (emphasis added).  And, here, it is undisputed that the United States, acting through Executive Order 13,599, "blocked" only "[a]ll property and interests in property of the Government of Iran, including the Central Bank of Iran**,** that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control

---

[16] In *Peterson v. Islamic Republic of Iran*, 876 F.3d 63 (2d Cir. 2017), the Second Circuit held that the FSIA did not bar extraterritorial collection of a foreign sovereign's assets.  *Id.* at 90–91.  The Supreme Court vacated that decision and remanded.  *Clearstream Banking S.A. v. Peterson*, 140 S. Ct. 813 (2020).  On remand, the Second Circuit did not reinstate its holding regarding the FSIA's prohibition on extraterritorial collection.  *See Peterson v. Islamic Republic of Iran*, 963 F.3d 192, 196 (2d Cir. 2020) (per curiam).

of any United States person, including any foreign branch." Blocking Property of the Gov't of Iran & Iranian Fin. Insts., 77 Fed. Reg. 6,659 (Feb. 5, 2012). As with the FSIA, there is no statutory basis under TRIA to extend it to a sovereign's assets outside the United States. As a result, any remaining assets of Iran at Halkbank cannot be turned over pursuant to CPLR 5225 and TRIA.

### A. Plaintiffs Have Not Met the Requirements of CPLR 5225(b).

A plaintiff seeking turnover under CPLR 5225(b) must also meet certain prerequisites. The provision itself requires that "[n]otice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested." CPLR 5225(b). In addition, "a judgment creditor seeking a turnover order must identify the particular property as to which it seeks a turnover, whether a specific bank account, account receivable, or office furniture." *Bernard v. Lombardo*, No. 16cv863, 2016 WL 7377240, at *2 (S.D.N.Y. Nov. 23, 2016).

Here, Plaintiffs have not alleged either. "The failure to effect such service is not a mere procedural irregularity but rather renders the proceeding jurisdictionally defective." *Oil City Petroleum Co., Inc. v. Fabac Realty Corp.*, 418 N.Y.S.2d 51, 51 (App. Div. 1979), *aff'd*, 407 N.E.2d 1334 (N.Y. 1980); *see also Bergdorf Goodman, Inc. v. Marine Midland Bank*, 411 N.Y.S.2d 490, 491 (Civ. Ct. 1978). Similarly, "Plaintiffs have not identified the particular property as to which they seek a turnover." *WowWee Grp. Ltd. v. Meirly*, No. 18cv706, 2020 WL 70489, at *3 (S.D.N.Y. Jan. 7, 2020). The claim should accordingly be dismissed.

### B. Plaintiffs Do Not Plead a Claim Under TRIA.

The deficiencies in Plaintiffs' TRIA claim are, if anything, even more fundamental. "Section 201(a) of TRIA allows a plaintiff to execute a judgment on *blocked assets* of a terrorist party, or its agency or instrumentality, to satisfy a judgment against the terrorist party." *Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152, 156 (2d Cir. 2018) (emphasis added). But, under the TRIA, the term "blocked assets" is not "an 'omnibus' term extending to all assets 'regulated' or 'licensed' by the

OFAC." *Weinstein v. Islamic Republic of Iran*, 299 F. Supp. 2d 63, 74–75 (E.D.N.Y. 2004).  Rather, as noted above, a "blocked asset" is defined to be any asset that is *actually* "seized or frozen by the United States" under, inter alia, the IEEPA.  TRIA § 201(d)(2).

      Plaintiffs' reliance on TRIA thus fails as a matter of law, because the assets they request be turned over are not blocked, or even in the United States.  Plaintiffs acknowledge as much, alleging that, "[h]ad Halkbank not concealed the Iranian assets that traveled through the U.S. financial system, those assets *would have been blocked*," and so request turnover of "any remaining Iranian funds" in Halkbank's possession.  SAC ¶¶ 181–82.  The claim should accordingly be dismissed.  *See, e.g.*, *Rubin v. Islamic Republic of Iran*, 709 F.3d 49, 58 (1st Cir. 2013) (concluding at-issue assets were not "blocked assets" subject to TRIA); *Bank of N.Y. v. Rubin*, 484 F.3d 149, 150 (2d Cir. 2007) (per curiam) (same).

## **CONCLUSION**

      For the foregoing reasons, this Court should grant Halkbank's motion to dismiss and dismiss the Second Amended Complaint.

Dated:  September 25, 2020
        Washington, D.C.

Respectfully submitted,

_____
John S. Williams (JW-6927)
Eden Schiffmann (admitted *pro hac vice*)
Akhil K. Gola (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, D.C. 20005

650 Fifth Avenue, Suite 1500
New York, New York 10019

Phone:  (202) 434-5000
Fax:     (202) 434-5029
Email:  jwilliams@wc.com

Mehmet Baysan (MB-8487)
Omer Er (5614573)

MICHELMAN & ROBINSON, LLP
800 Third Avenue, 24th Floor
New York, New York 10022
Phone: (212) 730-7700
Fax:     (212) 730-7725

*Attorneys for Defendant*